IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CLAY BENTON, JR., o/b/o § | |
| CLAY ALLEN BENTON, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:12-CV-0874-D |
| VS. § | |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION

Plaintiff Clay Benton, Jr. ("Clay") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), on behalf of his deceased father Clay Allen Benton ("Benton") for judicial review of the Commissioner of Social Security's ("Commissioner's") final decision denying his claim for disability insurance benefits under Title II of the Act. For the reasons that follow, the court vacates the Commissioner's decision and remands this matter for further proceedings.

I

In August 2005 Benton applied for disability insurance benefits, alleging that he had been disabled since February 2005. After his claim was denied administratively, Benton requested a hearing before an Administrative Law Judge ("ALJ"). Benton passed away in December 2006, before the hearing was held. His son Clay became the substitute party, and a hearing was held in December 2007. The ALJ found that Benton was not disabled. Clay

sought review by the Appeals Council, which remanded the matter for a new hearing and decision and directed that the ALJ give further consideration to the treating physician's opinion and Benton's maximum residual function capacity ("RFC"), that the ALJ evaluate more thoroughly Benton's alleged mental impairments, and, if necessary, that the ALJ obtain testimony from a vocational expert ("VE").  The ALJ held a second hearing in April 2010.

In that hearing, the ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 404.1520(a)(4) (2012) and concluded as follows: (1) Benton had not engaged in substantial gainful activity since February 2005, when he applied for benefits; (2) he had severe impairments of status post injury to cervical and lumbar spine, hypertension, Hepatitis C, cirrhosis, and depression; (3) he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) he had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except he could lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk for 2 to 4 hours, sit for 2 to 4 hours of an 8 hour workday, could climb, balance, stoop, kneel, crouch, and crawl occasionally, but needed to avoid climbing ladders, ropes, and scaffolds, or otherwise working at heights; (5) he was unable to perform any past relevant work; and (6) considering his age, education, work experience, and RFC, there existed jobs in significant numbers in the national economy that he could perform.  The ALJ therefore found that Benton had "not been under a disability, as defined in the Social Security Act, from February 3, 2005, through the date of this decision." R. 30.  The Appeals Council denied Clay's request for review, making the ALJ's decision

the final decision of the Commissioner.

Clay seeks judicial review of the Commissioner's decision, arguing that the ALJ erred in three ways: the ALJ (1) failed to properly weigh the medical evidence, (2) failed to properly evaluate Benton's credibility, and (3) relied upon flawed VE testimony.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted). "The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per

curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an applicant is disabled, the ALJ follows a five-step sequential analysis. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the ALJ finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id.* Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See, e.g.,*

*Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). "If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999)).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Clay first contends that the ALJ failed to properly weigh the medical evidence when determining Benton's RFC. To support this argument, Clay points to a lumbar spine impairment questionnaire completed by Benton's treating physician, Marlon D. Padilla, M.D. ("Dr. Padilla"). The questionnaire indicates that Benton's condition was guarded and unlikely to improve. According to the questionnaire, Benton had a limited range of motion at flexion, extension and rotations with tenderness and para-spinal muscle spasms, and an abnormal gait that was slow and labored; he could sit 4 hours total and stand or walk 2 hours total in an 8 hour workday, and would need to get up and move around every 30 minutes when sitting, and not sit again for 10 to 15 minutes. These conditions were expected to last at least the next 12 months, and he would be absent from work 2 to 3 days a month due to his condition.

The ALJ gave "little weight" to these opinions because he found Dr. Padilla's opinions to be inconsistent with records showing that Benton improved with treatment, a medical report finding that Benton could perform light exertional work, and the opinions of a non-examining state agency review physician. Clay maintains on several grounds that this was error.

Although the ALJ stated that he had assigned little weight to Dr. Padilla's questionnaire responses, the ALJ adopted in his RFC finding the great majority of Dr. Padilla's conclusions. The ALJ found that Benton could "stand and/or walk for two to four hours out of an eight hour workday, sit for two to four hours out of an eight hour workday,"

and occasionally carry twenty pounds.  R. 26.  Dr. Padilla opined that Benton could sit for 4 hours total and stand or walk for 2 hours.  The key difference between Dr. Padilla's opinion and the ALJ's RFC determination is that the RFC determination did not assume that Benton would need to get up and move every 30 minutes when sitting and not sit again for 10 to 15 minutes.

The ALJ did not err in omitting a limitation stating that Benton could not sit for longer than 30 minutes at a time.  Although an evaluation by the claimant's treating physician should be accorded great weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence," 20 C.F.R. § 404.1527(c)(2), the treating physician's opinion "may be assigned little or no weight when good cause is shown." *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000).  Good cause exists where "the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Id.* at 456.  "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted)).  In this case, substantial evidence supports the ALJ's decision to omit from the RFC a finding that, every 30 minutes, Benton needed a break of 10 to 15 minutes from sitting.

Ingrid Zasterova, M.D. ("Dr. Zasterova"), a consulting examiner for the Social Security Administration ("SSA") who examined Benton in November 2005, contradicted

much of Dr. Padilla's medical conclusions and observations.  Dr. Zasterova found that Benton's back had normal curvature and no palpatory tenderness.  She also found that Benton had almost a complete range of motion (including in all joints), had full muscle strength in all four extremities, could easily get on and off the examining table, was able to walk around the room, and had negative straight leg testing.  Furthermore, Shane Marcum, D.C. ("Dr. Marcum"), Benton's treating chiropractor, on two occasions found that Benton could perform "light work," which is defined as follows:

> Lifting 20 pounds maximum with frequent lifting and/or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be only a negligible amount, a job is in this category when it requires walking or standing to a significant degree or when it involves sitting most of the time with a degree of pushing and pulling of arm /or leg controls.

R. 397, 398.  As a special instruction, Dr. Marcum opined that Benton should "stretch every 2 hours [for] 5-8 minutes."  R. 398.  Although a chiropractor's opinions are not themselves entitled to controlling weight because chiropractors are not an "accepted medical source" and are entitled to less weight than opinions from medical doctors, *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (per curiam), they may be used "to show the severity of [an] impairment[] and how it affects [the claimant's] ability to work."  20 C.F.R. § 404.1513(d).

Benton's argument that the ALJ ignored the "consistent opinions and findings from Dr. Marcum and Zasterova," P. Br. at 17, is also misplaced because the ALJ discussed and considered in his decision the opinions and findings of both Drs. Zasterova and Marcum. That the ALJ gave emphasis to certain parts of their findings over others is not a basis to

- 8 -

disturb the decision because the ALJ is the ultimate factfinder and his conclusions are supported by substantial evidence. *See Slaughter v. Astrue*, 857 F. Supp.2d 631, 643 (S.D. Tex. 2012) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988) (per curiam)).

Benton separately argues that, even if there was substantial evidence on which to base the RFC determination, the ALJ erred by failing "to properly evaluate the treating doctor's findings under the enumerated factors in 20 C.F.R. § 404.1527[(c)](2)-(6)." The Fifth Circuit has held that "absent reliable medical evidence from a treating *or examining* physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]." *Newton*, 209 F.3d at 453 (first emphasis added). Although Dr. Zasterova was a consulting physician, she actually examined Benton and is therefore an examining physician. *See Ranes v. Astrue*, 2009 WL 2486037, at *7, 10 (N.D. Tex. Aug. 14, 2009) (Fitzwater, C.J.) (stating that a consulting physician who examines plaintiff once is a consulting examiner); *see also Downing v. Astrue*, 2012 WL 4354928, at *6 n.9 & 9 (N.D. Tex. Sept. 7, 2012) (Averitte, J.) (concluding that testimony of physician who examined plaintiff for disability evaluation for state agency was reliable evidence that satisfied *Newton*), *rec. adopted*, No. 2:11-CV-0170 (N.D. Tex. Sept. 24, 2012) (Robinson, J.) (order). Further, Dr. Zasterova not only controverted Dr. Padilla's medical findings, as described above, she found that Benton could sit for 1 hour and stand for 30 minutes and did not state that he would need 10 to 15 minute breaks. Because Dr. Padilla's opinion that Benton could sit only for 30 minutes is controverted by an examining physician's opinion,

the ALJ was not required to evaluate the regulatory criteria.[1]

IV

Clay contends next that the ALJ failed to evaluate properly Benton's credibility.

A

Clay maintains that the ALJ did not make proper credibility findings concerning Benton's subjective complaints about pain resulting in functional limitations beyond those embodied in the RFC. He argues, first, that the ALJ used the wrong legal standard to determine credibility by evaluating the consistency of statements about pain and functional limitations against the RFC and not the evidence of record. Clay contends, second, that despite the ALJ's obligation to comply with the SSA's *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. 1996) ("SSA 96-7p"),

---

[1] It is irrelevant that the ALJ would have to have evaluated the regulatory criteria were it only Dr. Marcum's opinion contradicting Dr. Padilla's opinion. *Newton*'s rule that the ALJ must perform a "detailed analysis of the treating physician's views" absent "reliable evidence from a treating or examining physician controverting claimant's treating physician" is premised on a concern that ALJs may otherwise reject or give less weight to a treating physician's opinion without sufficient articulated justifications. *See Contreras v. Massanari*, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) (Koenig, J.) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant."), *rec. adopted*, No. 1:00-CV-242-C (N.D. Tex. June 6, 2001) (Cummings, J.). Where, as here, reliable evidence from an examining physician contradicts specific opinions or conclusions of the treating physician, the ALJ need not have addressed the regulatory criteria in order to consider also the opinions and conclusions of a chiropractor. *See Qualls v. Astrue*, 339 Fed. Appx. 461, 467 (5th Cir. 2009) (per curiam) ("The *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it.").

"his findings [were] insufficient to find Mr. Benton not credible." P. Br. 20. Specifically, Clay contends that, in assessing credibility, the ALJ improperly characterized Benton's treatment as conservative, relied on spinal imaging, ignored Benton's work history, and ignored Clay's testimony without providing justification for doing so.

The Commissioner responds that the ALJ's credibility determination is based in the evidence, is adequately explained, and uses the correct legal standard. The Commissioner argues that the ALJ correctly relied on a variety of factors, including objective medical evidence and more general observations of Benton's condition, to determine that his complaints were not credible to the extent they were inconsistent with the RFC.

B

The ALJ stated and applied the proper legal standard. Clay does not deny that the ALJ set forth the governing two-part credibility standard, but he objects to the ALJ's finding that "[Benton's] statements concerning the intensity, persistence and limiting effects of [his alleged symptoms] are not credible to the extent they are inconsistent with the [RFC]." R. 27. As Clay notes, this type of reasoning "implies that ability to work is determined first and is then used to determine the claimant's credibility." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). But the ALJ's finding does not of itself require that the decision be disturbed. The statement is "meaningless boilerplate" that is "seen universally in ALJ decisions [and] adds nothing." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). The court must therefore disregard the statement insofar as it purports to provide justification for the ALJ's credibility determination, and determine whether the ALJ's credibility

determination is otherwise sufficiently explained and supported by substantial evidence.

C

The court holds that the ALJ's credibility determination is sufficiently explained and supported by substantial evidence.

The ALJ found that Benton's allegations of pain causing limitations beyond those encompassed in the RFC were not credible because "[t]he limitations alleged are neither consistent with nor well supported by the objective medical evidence." R. 27, 28. Clay maintains that the ALJ's credibility determination is not supported by substantial evidence, and he supports this position by challenging the ALJ's findings. Specifically, the ALJ characterized Benton's treatment as "conservative"; noted the lack of evidence that Benton underwent, or was recommended for, back surgery; stated that Benton was only taking over-the-counter ("OTC") pain medications; and observed that Benton did not receive treatment for his injuries after September 2005, which the ALJ found "certainly suggests [Benton's] symptoms improved and did not last for more than 12 months." R. 28. Clay objects to this characterization of Benton's treatment, and he correctly points out that he received at least four injections into the epidermal space of his spinal cord, was taking prescription medications such as Hydrocodone for pain in addition to OTC medications, and obtained treatment until January 2006. But so long as the ALJ's decision is supported by substantial evidence, his determination of credibility is entitled to deference. *See R.M.C. v. Astrue*, 2011 WL 1792924, at *10 (N.D. Tex. May 11, 2011) (Fitzwater, C.J.) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)). In reviewing for substantial evidence, this court does not

reweigh the evidence, but it seeks to determine whether there is more than a mere scintilla of evidence. *Spellman*, 1 F.3d at 360 (citing *Moore*, 919 F.2d at 904). Dr. Padilla, Benton's treating physician, characterized Benton's therapy and treatment as "conservative," R. 186, and Clay does not contradict the ALJ's finding that Benton never underwent, or was recommended for, back surgery. Moreover, the ALJ noted that spinal imaging showed only "mild" issues, and that in a physical exam, Benton was able to ambulate effectively, get on and off the examining table without difficulty, and perform other physical tasks unaided. Although "allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence," SSR 96-7p, "subjective complaints must be corroborated at least in part by objective medical testimony," *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) (citing *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (per curiam)). Thus the ALJ properly considered the objective medical evidence along with observations regarding Benton's treatment and behavior in order to find Benton's subjective complaints not credible.[2]

Clay also argues that the ALJ erred because he failed to consider Benton's work history. The ALJ need not follow formalistic rules, however, when evaluating credibility.

---

[2]Clay argues that the ALJ failed to address his testimony concerning Benton's condition. In fact, the ALJ summarized this testimony before analyzing the record and finding that "the limitations [due to pain] alleged are neither consistent with nor well supported by the objective medical evidence." R. 28. Thus even if Clay is correct that the ALJ is required to give reasons germane to each witness when rejecting his credibility, the ALJ did so in this case.

*See Pineda v. Astrue*, 289 Fed. Appx. 710, 714 (5th Cir. 2008) (per curiam) (citing *Falco v. Shalala*, 27 F.3d 160, 163, 164 (5th Cir. 1994)).  Because the ALJ indicated why he did not believe any claims of pain beyond the RFC, his failure to discuss Benton's work history "compromises no aspect of fairness or accuracy that this process is designed to ensure." *Falco*, 27 F.3d at 164.  The ALJ is in the best position to make such determinations of credibility based on the full record of evidence and live testimony, *id.*, and he need not explain every piece of evidence.

V

The court finally addresses Benton's contention that the ALJ relied on flawed VE testimony.

A

At step five, the Commissioner had the burden of showing that Benton could perform relevant work that existed in significant numbers in the national economy.  *See Bowling*, 36 F.3d at 435.  To establish that such work exists, "the ALJ relies on the medical-vocational guidelines or the testimony of a VE in response to a hypothetical question."  *Vogt v. Astrue*, 2011 WL 5245421, at *13 (N.D. Tex. Nov. 2, 2011) (Ramirez, J.) (citing *Bowling*, 36 F.3d at 435).  The ALJ relies on VE testimony in response to a hypothetical question because the VE "is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Carey*, 230 F.3d at 145 (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)).  But "[u]nless the hypothetical question posed to the [VE] by the ALJ can be said to incorporate reasonably all disabilities of the claimant

recognized by the ALJ [in the RFC] . . . , a determination of non-disability based on such a defective question cannot stand." *Bowling*, 36 F.3d at 436. Clay's failure to point out at the hearing any deficiencies in the hypothetical question does not "automatically salvage[] that hypothetical as a proper basis for a determination of non-disability." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). "If the ALJ relies on testimony elicited by a defective hypothetical question in making a disability determination, the Commissioner does not carry his burden of proof to show that a claimant could perform available work despite an impairment." *Vogt*, 2011 WL 5245421, at *13 (citing *Boyd*, 239 F.3d at 708).

B

Clay contends that the ALJ erred in relying on the VE's testimony because the hypothetical posed to the VE conflicted with Benton's RFC. In particular, the ALJ found that Benton had the RFC to "stand and/or walk for two to four hours out of an eight hour workday, [and] sit for two to four hours out of an eight hour workday." R. 26. The ALJ's hypothetical to the VE, however, assumed an individual who "during an eight hour work day could sit up to six hours or stand and walk two to four hours." R. 631. Benton therefore argues that, because the ALJ's RFC finding is more restrictive than the hypothetical posed to the VE, the hypothetical did not incorporate reasonably all of Benton's restrictions.[3]

In response, the Commissioner acknowledges the discrepancy between the RFC and

---

[3]Benton also argues that there is insufficient evidence to support the RFC or the hypothetical. The contention that there is insufficient evidence to support the RFC is addressed *supra* at § III. Even if the hypothetical is supported by substantial evidence, it must incorporate all reasonable limitations from the RFC. *See infra* § V(C).

the hypothetical but essentially argues that the court should apply a harmless error standard and conclude that Clay was not prejudiced for two reasons: first, although the VE responded to a hypothetical that was less restrictive than Benton's RFC, the VE identified jobs that someone with Benton's RFC can perform; and, second, substantial evidence supports a finding that Benton could sit for six hours at a time.

C

To determine whether the ALJ's error was harmless, it is important to recognize that the Commissioner's two arguments are premised on two different errors. Concerning the Commissioner's argument that the work identified by the VE also satisfies the RFC, the error is that the ALJ did not follow his own finding when constructing the hypothetical. But the Commissioner's argument that the evidence supports a finding that Benton could in fact sit for six hours at a time does not pertain to an error in the hypothetical *per se* but instead in the ALJ's RFC assessment, i.e., that he could in fact sit up to six hours even though the ALJ found that he could only sit for two to four hours. This cannot be harmless error, however, because for the court to conclude that there was substantial evidence that Benton could have sat up to six hours per workday, it would have to disregard the ALJ's finding that he could only sit for two to four hours. And it cannot do this because "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *See Newton*, 209 F.3d at 455. The Commissioner's argument invites this court to assume that the ALJ would reach a result on remand that he declined to reach in the initial decision. "This is speculation that lies beyond the scope of appellate review." *Boyd*, 239 F.3d at 707-

08 (citing *Brown*, 192 F.3d at 496). By contrast, applying harmless error review to determine whether Clay was prejudiced by the ALJ's not following the RFC determination does not require the court to substitute its judgment of the facts for the ALJ's, speculate on what the ALJ could have done or would do on remand, or accept a *post hoc* rationalization.

The court nevertheless holds that the ALJ's reliance on a hypothetical that did not reasonably incorporate all of the restrictions from the RFC was not harmless. There is no question that the hypothetical excluded a key limitation on Benton's ability to work: his ability to sit for only two to four hours in an eight hour work day. The Commissioner argues this error is harmless based on a simple syllogism: Benton's RFC enabled him to perform light work, anyone who can perform light work can perform sedentary work, therefore Benton could perform sedentary work, which is precisely the type of work the VE identified. The logical flaw in this contention is that it is not true that a person who can perform light work can perform any type of sedentary work. Under the SSA regulations, "[i]f someone can do light work, we determine that he or she can also do sedentary work, *unless there are additional limiting factors such as . . . inability to sit for long periods of time.*" 20 C.F.R. § 404.1567(b) (emphasis added). Because the ALJ found that Benton could not sit for more than two to four hours in an eight hour work day, it does not follow that he could do any type of sedentary work that existed in significant numbers in the national economy.

* * *

For the reasons explained, the Commissioner's decision is VACATED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this opinion.

November 8, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE